IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

FELICIA BOWMAN                                                    PLAINTIFF

VS.                         CASE NO. 4:15-CV-00127-SWW

ARKANSAS REGIONAL ORGAN
RECOVERY AGENCY                                                  DEFENDANT

FIRST AMENDED COMPLAINT

The plaintiff, Felicia Bowman, respectfully comes before this Court, by and through her

attorneys, Janet L. Pulliam and Martin W. Bowen, and for her First Amended Complaint against

the defendant, Arkansas Regional Organ Recovery Agency, states:

STATEMENT OF JURISDICTION AND VENUE

1.      The plaintiff, Felicia Bowman, is a black female and citizen of Pulaski County,

Arkansas.

2.      The defendant, Arkansas Regional Organ Recovery Agency ("ARORA"), is an

Arkansas non-profit corporation and has its principal place of business in Pulaski County,

Arkansas.

3.      This action is brought for redress of employment discrimination based on race and

retaliation for filing a charge of racial discrimination pursuant to Title VII of the Civil Rights Act

of 1964, 42 U.S.C. § 2000e-1, *et seq.,* and the Arkansas Civil Rights Act of 1993, Ark. Code

Ann. §§ 16-123-101, *et seq*.

4.      This Court has jurisdiction over this case pursuant to 42 U.S.C. § 2000e-5.

5.      Ms. Bowman seeks compensatory and punitive damages against ARORA, as well

as equitable and other relief, pursuant to 42 U.S.C. § 2000e-5(g) and Ark. Code Ann. § 16-123-

107(c).

STATEMENT OF FACTS PRESENTED

6.     Ms. Bowman was born on January 21, 1966, and raised in Stuttgart, Arkansas. She is the oldest of three girls who lost both parents before graduating from high school.

7.     Ms. Bowman is married to Romario Bowman and is the mother of one son, Marcus, who will be completing his first year in college this year.

8.     Ms. Bowman attended Southern Arkansas University and obtained a Bachelor's Degree in Accounting in May of 1988.

9.     Ms. Bowman also attended Webster University and graduated with honors with a Master's Degree in Human Resource Management in December of 2006.

10.     ARORA is a corporation engaged in the business of organ, tissue, and eye procurement throughout Arkansas and has approximately 64 employees at the present time.

11.     ARORA has nine or more employees in the State of Arkansas in each of twenty or more calendar weeks in the current and preceding calendar years.

12.     ARORA hired the plaintiff as its Director of Finance, Director of Human Resources, and Corporate Compliance Officer on March 1, 2004.

13.     In that capacity, Ms. Bowman was responsible for management and oversight of the Finance and Human Resources departments, corporate compliance and reporting, employee benefits, commercial insurance, policies and procedures, financial management, reporting, and audits, and strategic planning.

14.     Ms. Bowman worked in that capacity for over ten years and reported directly to ARORA's Executive Director, Boyd Ward (white male), during that time.

15.     During that time, neither Ms. Bowman nor any other black employee was promoted by ARORA.

16.     During the same time, numerous white employees were promoted by ARORA.

17.     During the same time, promotions were made by Mr. Ward as Executive Director without approval of ARORA's Board of Directors (the "Board").

18.     Mr. Ward was authorized as Executive Director to make promotions without Board approval.

19.     In October of 2013, Mr. Ward announced his retirement to the Board.

20.     It was decided that Mr. Ward's last day on the job would be September 30, 2014.

21.     After announcing his retirement, Mr. Ward and the Board conducted a nationwide search for a new Executive Director.

22.     Based on that search, the Board unanimously decided that its Director of Hospital Development, Michael Hudson, was the best person to replace Mr. Ward and promoted him to that position.

23.     Mr. Hudson's start date as Executive Director was May 1, 2014.

24.     The Board decided that Mr. Ward and Mr. Hudson would serve as co-Executive Directors from May 1, 2014, to September 30, 2014, and for Mr. Ward to train Mr. Hudson during that time.

25.     In July of 2014, Mr. Ward notified the Board that Mr. Hudson had completed his training and that he would be relinquishing all of his duties and responsibilities as Executive Director to Mr. Hudson effective August 1, 2014.

26.     The Board decided that Mr. Ward would retain his office through the end of September consistent with the terms of his retirement.

27.     After becoming sole Executive Director on August 1, 2014, Mr. Hudson promoted a number of black and white employees.

28.     These promotions included the promotion of Ms. Bowman from Director of Finance and Director of Human Resources to Chief Financial Officer.

29.     The promotions given to Ms. Bowman and the other black employees were announced to ARORA's management team on September 3, 2014.

30.     ARORA's Director of Quality Assurance, Patti Gottschall (white female), was visibly upset with the announcement and stormed out of the meeting when it was over.

31.     Mr. Ward and ARORA's Medical Director, Dr. Bill Fiser (white male), were upset with the announcement as well.

32.     The next day, September 4, 2014, Dr. Fiser told Ms. Gottschall that not even a massage could get his mind off "the situation" but that he would work through it and come up with his "own personal corrective action plan."

33.     Dr. Fiser told Ms. Gottschall that it would take a few days to come up with a plan because he was in a "red state."

34.     The same day, Mr. Ward called Ms. Bowman and questioned her about the promotions.

35.     The next day, Mr. Ward went to Ms. Bowman's office, closed the door, and told her that he needed to see the paperwork for all promotions made by Mr. Hudson since becoming co-Executive Director on May 1, 2014.

36.     Because Mr. Ward was no longer Executive Director and did not have authority to demand that paperwork, Ms. Bowman told Mr. Ward that she would need to call Mr. Hudson for authority to produce it and started to pick up the phone and call him.

37.     Mr. Ward told Ms. Bowman in a very firm tone that she would not contact Mr. Hudson about his request.

38.     Mr. Ward then stood up, leaned over Ms. Bowman's desk, and accused her of violating her duty as HR Director to advise Mr. Hudson that he did not have authority to promote her.

39.     Ms. Bowman was fearful of Mr. Ward's behavior and asked him to leave her office.

40.     Mr. Ward refused so Ms. Bowman locked up her files and left the office in her car.

41.     Ms. Bowman called and spoke with Mr. Hudson a few minutes later and told him about the incident with Mr. Ward.

42.     Mr. Hudson, who was out of the office when Ms. Bowman called, went to the office to speak with Mr. Ward.

43.     Mr. Ward left the office before Mr. Hudson arrived.

44.     Mr. Hudson then sent an e-mail to the Chairman of the Board, informed him of the promotions given to Ms. Bowman and the other black employees, and told him what Mr. Ward did to Ms. Bowman after those promotions were announced.

45.     In response to that e-mail, the Chairman told Mr. Hudson that he and another member of the Board both agreed that Mr. Hudson was authorized to promote Ms. Bowman and the other black employees and that the Board would ask Mr. Ward to leave and not come back to the office.

46.     True to its word, the Board asked Mr. Ward later that day to leave and not come back.

47.     On October 6, 2014, Dr. Fiser announced his immediate resignation as Medical Director.

48.     Dr. Fiser cleaned out his office that weekend and erased all files (not including e-mails) from his computer.

49.     The Board was shocked by Dr. Fiser's resignation and instructed Mr. Hudson to start looking for a replacement Medical Director.

50.     Several days later, the Chairman spoke with Dr. Fiser and asked him to return.

51.     On or about October 12, 2014, Dr. Fiser presented the Board with a list of the things he wanted in exchange for his return as Medical Director.

52.     Among other things, Dr. Fiser told the Board that he would return as Medical Director only if the Board agreed to terminate Mr. Hudson and rescind the promotions given to Ms. Bowman and the other black employees.

53.     Dr. Fiser's demand for rescission of the promotion given to Ms. Bowman was based on race.

54.     On October 12, 2014, the Board accepted the racially-discriminatory condition imposed by Dr. Fiser with respect to Ms. Bowman and adopted minutes stating, among other things, that the position of Chief Financial Officer was created without the Board's authority and without notice to the Board.

55.     The minutes of the October 12 meeting also state, among other things, that the Board agreed to fire the lawyers allegedly hired by Mr. Hudson to give advice regarding the creation of executive positions, to change the Corporate Compliance Officer (Ms. Bowman), and to change the structure of the company so that Ms. Gottschall would report directly to Dr. Fiser instead of Audrey Coleman, one of the black employees promoted by Mr. Hudson.

56.     Four days later, on October 16, 2014, the Board called a meeting "to discuss the problematic issues involving the performance of our new executive director, Mike Hudson" and

issued minutes stating that "it was agreed unanimously that Mike Hudson should be terminated as executive director within the next two weeks" and that the Board "will plan to participate in a conference call next week to discuss and approve the steps planned to carry out the termination."

57.     On October 23, 2014, the Board met again and decided that Mr. Hudson would be terminated on October 27, 2014, at 9:00 a.m., that no reasons for the termination would be given, that he will be given the option of resigning or negotiating a severance agreement with its attorney, that he would be asked to turn over all company-owned property and leave the office immediately, that his e-mail account would be deactivated at 9:15 a.m., and that Dr. Fiser would return as Medical Director and serve as interim Executive Director until a replacement could be found.

58.     On October 27, 2014, at 9:00 a.m., the Chairman and another member of the Board, accompanied by an armed off-duty Little Rock Police officer, informed Mr. Hudson that he was terminated and escorted him from the premises.

59.     The Board subsequently entered into a severance agreement with Mr. Hudson and bought his silence for a substantial amount of money.

60.     Not being able to speak with Mr. Hudson at this time without a subpoena or court order, Ms. Bowman reserves the right to amend this complaint once Mr. Hudson is deposed.

61.     The night that Mr. Hudson was terminated, the Board met again and issued minutes identical to those issued with respect to the Board meeting on October 12, 2014.

62.     Ms. Bowman has reason to believe, and therefore alleges, that the purported minutes of the October 12 meeting was in fact a list of the demands presented by Dr. Fiser as a condition for his return to Medical Director.

63.     On October 28, 2014, Dr. Fiser informed the entire staff by e-mail that ARORA had a new Corporate Compliance Officer (no longer Ms. Bowman).

64.     On November 24, 2014, Dr. Fiser informed Ms. Bowman that her promotion to Chief Financial Officer was rescinded and that she would return as Director of Finance but not Director of Human Resources.

65.     At the same time, Dr. Fiser issued a memorandum falsely charging Ms. Bowman with "lack of transparency and the conflict of interest that arose as a result of her promotion to CFO" and placed the memorandum in her personnel file.

66.     As the e-mail from the Chairman to Mr. Hudson on September 5 clearly states, the promotion of Ms. Bowen was authorized.

67.     Ms. Bowman did not lack transparency because it was Mr. Hudson's duty, not her duty, to inform the Board of her promotion, which he did on September 5.

68.     The Board had no reason to punish Ms. Bowman for a promotion offered by her boss and its reasons for doing so are a pretext for its unlawful racial animus.

## COUNT ONE:  UNLAWFUL RACIAL DISCRIMINATION IN VIOLATION OF TITLE VII

69.     Ms. Bowman is black and thus a member of a protected class.

70.     Ms. Bowman was qualified for the duties and pay raise to which she was promoted.

71.     In fact, the pay raise given to Ms. Bowman was based on market research of salaries conducted by ARORA itself.

72.     The Board rescinded Ms. Bowman's promotion and discriminated against her on the basis of race as described above.

73.     The Board intended to discriminate against Ms. Bowman on the basis of race and is thus guilty of unlawful racial discrimination in violation of Title VII.

74.     Ms. Bowman filed a timely charge of unlawful racial discrimination against ARORA with the Equal Employment Opportunity Commission ("EEOC") on December 1, 2014.

75.     The EEOC issued a Notice of Right to Sue on December 8, 2014, which Ms. Bowman received on December 10, 2014.

76.     Ms. Bowman timely filed this action on March 3, 2015, within 90 days after receiving the Notice of Right to Sue.

<u>COUNT TWO:  UNLAWFUL RETALIATION FOR FILING A CLAIM</u>
<u>WITH THE EEOC IN VIOLATION OF TITLE VII</u>

77.     As stated above, Ms. Bowman filed a timely charge of unlawful racial discrimination against ARORA with the EEOC on December 1, 2014.

78.     Ms. Bowman filed that charge in good faith and with the belief that it was legal and valid in all respects.

79.     ARORA has retaliated against Ms. Bowman for filing that claim.

80.     For example, on or about December 15, 2014, the Chairman sent out letters to ARORA's banks removing Ms. Bowman from the list of people authorized to review its bank account information, a critical part of her job as Director of Finance.

81.     On March 6, 2015, Ms. Bowman was given the worst performance evaluation of her eleven years with the company, which was totally unjustified and inconsistent with her eleven years of exemplary service.

82.     On March 6, 2015, Ms. Bowman was told that she had to work each day from 8:30 a.m. to 5:00 p.m. even though she had worked alternate hours (from 7:30 a.m. to 3:00 p.m.)

for the last eight years and other directors were told that the alternate work hours did not apply to them.

83.     Unlike Ms. Bowman, the other directors continued to work alternate hours at their convenience.

84.     ARORA has subjected Ms. Bowman to these and other acts of retaliation in response to the EEOC claim she filed on December 1, 2014, in violation of Title VII.

85.     Ms. Bowman filed a timely charge of unlawful retaliation against ARORA with the EEOC on April 23, 2015.

86.     The EEOC issued a Notice of Right to Sue on April 28, 2015, which Ms. Bowman received on April 29, 2015.

87.     Ms. Bowman has timely filed this claim by filing it within 90 days after receiving the Notice of Right to Sue.

COUNT THREE:  UNLAWFUL RACIAL DISCRIMINATION<br>IN VIOLATION OF THE ARKANSAS CIVIL RIGHTS ACT

88.     By rescinding Ms. Bowman's promotion and discriminating against her on the basis of race as described above, the Board violated Ms. Bowman's right to be free from racial discrimination in the workplace under the Arkansas Civil Rights Act of 1993 ("ACRA"), specifically Ark. Code Ann. § 16-123-107(a).

89.     The Board intended to discriminate against Ms. Bowman on the basis of race and is thus guilty of unlawful racial discrimination in violation of the ACRA.

COUNT FOUR:  UNLAWFUL RETALIATION FOR FILING A CLAIM<br>WITH THE EEOC IN VIOLATION OF THE ARKANSAS CIVIL RIGHTS ACT

90.     For the reasons set forth in Count Two, the Board retaliated against Ms. Bowman for filing her claim with the EEOC on December 1, 2014.

91.     By subjecting Ms. Bowman to such acts of retaliation, the Board violated Ms. Bowman's right to be free from such retaliation in the workplace under the ACRA, specifically Ark. Code Ann. § 16-123-108(a).

## DAMAGES

92.     Ms. Bowman has suffered damages as a direct and proximate result of the Board's unlawful acts as described herein.

93.     Ms. Bowman's damages include, but are not necessarily limited to, front pay and back pay based on the promotion taken from her.

94.     In addition, Ms. Bowman has suffered, and continues to suffer, mental anguish, embarrassment, and humiliation as a direct and proximate result of the Board's unlawful acts as described herein.

95.     The unlawful acts committed by the Board were intentional and malicious and justify the imposition of punitive damages.

## JURY DEMAND

96.     Ms. Bowman respectfully demands a jury trial with respect to all issues of fact that may arise herein.

WHEREFORE, the plaintiff, Felicia Bowman, prays for judgment against the defendant, Arkansas Regional Organ Recovery Agency, for compensatory damages in the form of front pay and back pay, with pre-judgment interest thereon at the maximum rate allowed by law, punitive damages, injunctive relief, her costs herein expended, including reasonable attorney's fees, and all other relief to which she may be entitled under Title VII and the ACRA.

Respectfully submitted,

FELICIA BOWMAN, Plaintiff

MITCHELL, BLACKSTOCK, IVERS,
SNEDDON & MARSHALL, PLLC
1010 West Third Street
Little Rock, AR  72201
501-378-7870 (phone)
501-375-1940 (fax)
jpulliam@mitchellblackstock.com

By: /s/ Janet L. Pulliam
_____

Janet L. Pulliam (AR 79233)

and

BOWEN LAW FIRM, PLLC
121 North Spring Street
Searcy, AR  72143
501-268-1800 (phone)
501-368-0707 (fax)
bowen@bowenlaw.us

By: /s/ Martin W. Bowen
_____

Martin W. Bowen (AR 90095)